IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 18, 2005

## STATE OF TENNESSEE v. RODNEY BUFORD

**Appeal from the Criminal Court for Davidson County**
**No. 2003-C-2109     Mark J. Fishburn, Judge**

_____

**No. M2004-01568-CCA-R3-CD - Filed September 22, 2005**

_____

The Appellant, Rodney Buford, was convicted by a Davidson County jury of especially aggravated robbery and aggravated burglary. He was sentenced to consecutive sentences of twenty-five years for especially aggravated burglary and six years for aggravated burglary for an effective thirty-one year sentence. On appeal, Buford argues: (1) that the trial court erred in denying his motion for a bill of particulars; and (2) that his sentences are excessive, and the trial court erred in imposing consecutive sentences. After review of the record, we affirm the judgments of conviction and resulting sentences.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

DAVID G. HAYES, J., delivered the opinion of the court, in which JERRY L. SMITH and THOMAS T. WOODALL, JJ., joined.

Emma Rae Tennet (on appeal), Assistant Public Defender; and Allegra Montgomery (at trial), Assistant Public Defender, Nashville, Tennessee, for the Appellant, Rodney Buford.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Victor S. Johnson III, District Attorney General; and James Todd, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**Factual Background**

At approximately 1:30 a.m. on May 25, 2003, the victim, seventy-seven year old Mildred Holmes, awoke and realized that she had forgotten to take her medicine. After taking her medicine, the victim turned off the lights and was returning to bed when her doorbell rang. Ms. Holmes looked through the peephole and recognized the Appellant, whom she had known for several years through her close friendship with the Appellant's grandmother. Ms. Holmes agreed to let the Appellant inside to use the telephone to call his grandmother who he claimed had accidentally locked him out

of the house. Upon entering, the Appellant went to the kitchen, under the pretense of making a phone call, while the victim waited in the dining room. Afterwards, Ms. Holmes followed the Appellant to the front door, intending to lock the door behind him. When the Appellant was almost to the front door, he turned to the victim and put her in a "bear-hug," telling her that he wanted her money and car keys. When the victim began to struggle, the Appellant told her "don't make me kill you." The victim testified that at one point the Appellant reached underneath her nightgown and began to remove her underwear but stopped after she told him she had recently undergone surgery.

The two returned to the dining room area, and the victim gave the Appellant approximately $50 in cash and her car keys. The Appellant then picked up a glass ornament in the shape of an apple and began hitting the victim in the head. The victim lost consciousness a couple of times during the assault. At one point, the victim regained consciousness and saw the Appellant washing his hands. When he realized that she was conscious, he returned to her, picked up the glass apple, and resumed hitting her in the head. At some point during the attack, the Appellant tied the victim up with ribbon and a calculator cord. The Appellant eventually left the residence, taking the victim's 1994 Honda.

When the victim discovered that the Appellant was gone, she freed herself from the bindings and called 911. She was conscious and alert when the officer arrived and was able to give the Appellant's name and relate the events. Emergency personnel arrived and began treatment of the victim's gushing head wound. She was transported to the hospital by ambulance where it was discovered that, in addition to multiple contusions and lacerations, she had sustained a torn artery in her head, which required immediate suturing in order to stop the bleeding. Had the bleeding not been stopped immediately, the victim's life would have been in danger. The victim also received additional stitches, sutures, and staples to her other various injuries. Two days later, she returned to the emergency room, complaining of severe pain in her wrist and hand. A medical examination revealed that she had cellutitis, an infection of the skin, which developed from the assault.

The Appellant was later arrested in a motel after pawning the victim's car for crack cocaine. Following his arrest, the Appellant gave a statement to the police confessing his involvement in the crimes. The Appellant explained that, at the time of the crimes, he had been smoking crack cocaine. On September 5, 2003, a Davidson County grand jury returned a three-count indictment against the Appellant charging him with especially aggravated burglary, especially aggravated robbery, and attempted aggravated rape. Following a jury trial, the Appellant was convicted of the burglary and robbery charges but acquitted of the attempted rape. At the March 26, 2004 sentencing hearing, the trial court reduced the Appellant's conviction for especially aggravated burglary to that of aggravated burglary and entered judgment accordingly.[1] Applying several enhancement but no mitigating factors, the trial court sentenced the Appellant to twenty-five years for especially aggravated robbery

---

[1]At the close of the State's proof, the Appellant moved for judgment of acquittal with regard to the charge of especially aggravated burglary. The trial court properly noted that under the provision of Tennessee Code Annotated section 39-14-404(b) (2003), a defendant may not be prosecuted for especially aggravated burglary, resulting in serious bodily injury, and especially aggravated robbery, also resulting in serious bodily injury, when the infliction of serious bodily injury results from a single act. *See State v. Oller*, 851 S.W.2d 841, 843 (Tenn. Crim. App. 1992).

and to six years for aggravated burglary. The court ordered that the sentences be served consecutively to one another as well as consecutively to an unserved four-year sentence for theft.[2] Following the denial of the his motion for new trial, the Appellant filed the instant timely appeal.

**Analysis**

On appeal, the Appellant raises two issues for our review. First, he asserts that the trial court erred in denying his motion for a bill of particulars regarding the element of serious bodily injury, as alleged in both charged crimes. Second, he asserts that the trial court erred in imposing excessive sentences and in ordering that the sentences be served consecutively.

## I. Bill of Particulars

On the morning of trial, the Appellant orally moved for a bill of particulars regarding the specific nature of the alleged serious bodily injury. Specifically, the Appellant requested notice of which of the five statutory definitions of serious bodily injury the State intended to rely upon in their prosecution of especially aggravated robbery and especially aggravated burglary. The trial court denied the motion, noting that the Appellant had been afforded open file discovery, which included all the victim's medical reports that the State was relying upon. The Appellant alleges that this ruling was error and "deprived him of specific and necessary information about the charges against him, thereby impairing the preparation of his defense."

The Appellant was charged with especially aggravated robbery and especially aggravated burglary, both of which require proof of serious bodily injury. Serious bodily injury is defined as bodily injury which involves:

(A) A substantial risk of death;

(B) Protracted unconsciousness;

(C) Extreme physical pain;

(D) Protracted or obvious disfigurement; or

(E) Protracted loss or substantial impairment of a function of a bodily member, organ, or mental faculty.

Tenn. Code Ann. § 39-11-106(a)(34) (2003).

---

[2]Approximately ninety days prior to the commission of the instant crimes, the Appellant pled guilty to theft and evading arrest in the Davidson County Criminal Court and received a four-year suspended sentence with supervised probation.

Tennessee Rule of Criminal Procedure 7(c) provides that, "upon motion of the defendant the court may direct the filing of a bill of particulars so as to adequately identify the offense charged." The function of a bill of particulars is to provide the defendant with the details of the charge he faces, to avoid his prejudicial surprise at trial, and to allow him to preserve any claim of double jeopardy. *State v. Byrd*, 820 S.W.2d 739, 741 (Tenn. 1991); *State v. Hicks*, 666 S.W.2d 54, 56 (Tenn. 1984). A defendant should be given enough information about the events charged so that he may, with diligence, adequately prepare for trial. If the needed information is in the indictment or has been provided by the State in some other satisfactory form, no bill of particulars is required. The bill of particulars is *not* properly utilized for the purposes of broad discovery; rather, it is sufficient if it provides the defendant with the information necessary to prepare a defense and avoid prejudicial surprise. *See State v. Stephenson*, 878 S.W.2d 530, 539 (Tenn. 1994). Specifically, the bill of particulars is not a device which requires the State to reveal its evidence or theories, except to the extent that those things are revealed via disclosure of the necessary information to fulfill the purposes of the bill of particulars. *Id.* An abuse of discretion must be shown to demonstrate error in denying a bill of particulars. *Id.*

As the State points out, there is no allegation that the Appellant was not fully apprised of and given access to all discoverable information concerning the case, including all medical records of the victim. It appears that the Appellant was trying to compel the State to commit itself to a particular theory of the case. Under these circumstances, the trial court did not abuse its discretion in denying a bill of particulars. Moreover, there is no showing that the defendant was prejudiced in the preparation of his defense by the lack of the specific information which was requested on the morning of trial. The Appellant has provided no specific evidence withheld by the State which resulted in surprise, nor has the Appellant shown how he was prejudiced. To the contrary, the record reflects that the Appellant was familiar with the State's evidence and theory of the case. The Appellant thoroughly cross-examined the doctors regarding the extent of the victim's injuries. Nothing indicates that the Appellant was unable to adequately prepare his defense or that he was hampered by the lack of specificity. *See Byrd*, 820 S.W.2d at 742. This issue is without merit.

## II. Sentencing

Next, the Appellant challenges the sentences imposed by the trial court. Specifically, he argues that the court erred in imposing the maximum sentence for each conviction based upon erroneous application of enhancement factors and non-application of a mitigating factor, as well as by ordering consecutive sentencing. When an accused challenges the length, range, or manner of service of a sentence, this court has a duty to conduct a *de novo* review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (2003); *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *Ashby*, 823 S.W.2d at 169. When conducting a *de novo* review of a sentence, this court must consider: (a) the evidence, if any, received at trial and the sentencing hearing; (b) the pre-sentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any

statutory mitigating or enhancement factors; (f) any statement that the Appellant made on his own behalf; and (g) the potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210 (2003); *Ashby*, 823 S.W.2d at 168. Furthermore, we emphasize that facts relevant to sentencing must be established by a preponderance of the evidence and not beyond a reasonable doubt. *State v. Winfield*, 23 S.W.3d 279, 283 (Tenn. 2000).

If our review reflects that the trial court, following the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and made findings of fact that are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). However, where the trial court fails to comply with the statutory provisions of sentencing, appellate review is *de novo* without a presumption of correctness. In the present case, the Appellant asserts that the trial court's sentencing decisions are not entitled to the presumption of correctness because the court misapplied at least one enhancement factor, failed to apply one mitigating factor, and erroneously found that Tennessee Code Annotated section 40-35-115(b)(4) was applicable in consecutive sentencing.

The Appellant was sentenced, as a standard Range I offender, to serve twenty-five years for the especially aggravated robbery conviction, a Class A felony, and six years for the aggravated burglary conviction, a Class C felony. For standard offenders, the appropriate sentence range for a Class A felony is fifteen to twenty-five years. Tenn. Code Ann. § 40-35-112(a)(1) (2003). The presumptive sentence is the midpoint within the range if there are no enhancement or mitigating factors. Tenn. Code Ann. § 40-35-210(c). For standard offenders, the appropriate sentencing range for a Class C felony is three to six years. Tenn. Code Ann. § 40-35-112(3). The presumptive sentence for a Class C felony is the minimum sentence within the range absent enhancement or mitigating factors. *Id*. The presumptive sentence is then increased for applicable enhancing factors and decreased for applicable mitigating factors. *Id*. at (d), (e).

### a. Enhancement Factors

With regard to the especially aggravated robbery conviction, the trial court applied the following enhancement factors: (2) that the Appellant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; (5) that the victim of the offense was particularly vulnerable because of age; (9) that the defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community; (11) that the defendant has no hesitation about committing a crime when the risk to human life was high; and (14) that the felony was committed while the defendant was on probation for a felony. *See* Tenn. Code Ann. § 40-35-114(2), (5), (9), (11), (14). In addition to applying the same factors to the aggravated burglary conviction, the court also applied: (6) that the defendant treated or allowed the victim to be treated with exceptional cruelty during the commission of the offense; (7) the personal injuries inflicted upon the victim were particularly great; and (17) that the crime was committed under circumstances under which the potential for bodily injury was particularly great. *Id*. at (6), (7), (17).

The Appellant challenges only the application of enhancement factor (5), that the victim was particularly vulnerable because of age or physical or mental disability. Additionally, the Appellant asserts that the sentences imposed are in conflict with *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004), based upon the application of certain enhancement factors without jury findings or admissions.

We note initially that the *Blakely* issue has been rendered moot by the Tennessee Supreme Court's recent decision in *State v. Gomez*, 163 S.W.3d 632, (Tenn. 2005). Our supreme court held that the 1989 Sentencing Reform Act "authorizes a discretionary, non-mandatory sentencing procedure . . . [which] sets out broad sentencing principles, enhancement and mitigating factors, and a presumptive sentence, all of which serve to guide trial judges in exercising their discretion to select an appropriate sentence within the range set by the Legislature. Under the Reform Act, the finding of an enhancement factor does not mandate an increased sentence." *Id.* at 661. Accordingly, the court held that the Tennessee Sentencing Reform Act does not violate the Sixth Amendment guarantee of a jury trial and is, thus, not affected by the *Blakely* decision. *Id.* Thus, the Appellant is not entitled to relief under *Blakely*.

With regard to the application of enhancement factor (5), the Appellant argues that the trial court erred in applying this factor because the record established that the victim, though seventy-seven years old, was very active, taking senior strength training, participating in water aerobics, living alone, and caring for her grandchildren. The Appellant argues that age alone is insufficient to permit application of the factor. Rather, the State must establish that because of age or disability, the victim was particularly vulnerable.

The Appellant has correctly stated the standard for application of this factor. In *State v. Adams*, our supreme court held that the vulnerability enhancement factor relates more to the natural physical and mental limitations of the victim than merely to the victim's chronological age and that the factor should be used if the circumstances show that the victim, because of age or physical or mental condition, was in fact "particularly vulnerable," *i.e.*, incapable of resisting, summoning help, or testifying against the perpetrator. 864 S.W.2d 31, 35 (Tenn. 1993). It is the State's burden to prove the victim's limitations rendered her particularly vulnerable. *Id.* Where the victim's age is the asserted basis for particular vulnerability, our supreme court has held that "unless the State produces evidence of physical or mental limitations at the time of the offense, alone with proof of the victim's age, it cannot be presumed that the victim was particularly vulnerable based solely on her age." *State v. Poole*, 945 S.W.2d 93, 98 (Tenn. 1997).

The proof in the record is insufficient to establish that the victim's age alone made her more vulnerable to the Appellant. Based on the circumstances presented in this case and upon applicable case law, we conclude that the trial court erred in considering enhancement factor (5) in determining the length of Appellant's sentences for especially aggravated robbery and aggravated burglary.

The Appellant does not challenge the application of the remaining enhancement factors, but, after review of the record, we conclude that the trial court also erred in applying enhancement factor

(11), that the defendant had no hesitation about committing a crime when the risk to human life was high, to the conviction for especially aggravated robbery. As a general rule, enhancement factor (11) is necessarily inherent in an especially aggravated robbery that is committed with a deadly weapon, as was the case here. *See State v. Makoka*, 885 S.W.2d 366, 373 (Tenn. Crim. App. 1994). After review, we find no other error in the application of the remaining enhancement factors. Thus, we find that the court erred in its application of two enhancement factors with regard to the conviction for especially aggravated robbery and of one enhancement factor to the aggravated burglary conviction.

### b. Mitigating Factors

Next, the Appellant contends that the court erred in failing to apply mitigating factor 13, based upon the Appellant's expressed remorse. The Appellant argues that because he gave a full statement to police admitting his involvement in the crimes and apologized at length to the victim during the sentencing hearing, the trial court should have mitigated his sentence.

We note that "genuine, sincere remorse is a proper mitigating factor." *State v. Williamson*, 919 S.W.2d 69, 83 (Tenn. Crim. App. 1995). However, a trial court must determine the credibility of a defendant's claims of remorse before the mitigating factor may be properly applied. *See State v. Graylin Burton*, No. M1999-01997-CCA-R3-PC (Tenn. Crim. App. at Nashville, Feb. 16, 2001). Despite hearing the Appellant's apologies, the trial court found that no mitigating factors were applicable. The trial court, by observing the Appellant's demeanor and assessing credibility, is in a much better position to determine a defendant's remorse than is this court. Upon review, it is clear that the only proof in the record of the Appellant's remorse were his self-serving statements. Accordingly, this issue is without merit.

Although we have determined that the court misapplied certain enhancement factors, this does not necessarily lead to a reduction in the Appellant's sentence length. *Winfield*, 23 S.W.3d at 284. Based on the presence of three enhancing factors for the especially aggravated robbery conviction, seven enhancement factors for the aggravated burglary conviction, and no mitigating factors, we find no error in the trial court's determination of the length of the sentences. The imposition of the maximum sentences within the appropriate range for these offenses based upon the applicable enhancement factors is well within the discretion afforded to the trial court under Tennessee's sentencing scheme. *See Gomez*, 163 S.W.3d at 661. The *Gomez* court concluded that "even after an enhancement factor is found, this statute affords the trial court the discretion to choose an appropriate sentence *anywhere* within the statutory range." *Id*. at 659. Thus, we affirm the Appellant's sentences of twenty-five years for the especially aggravated robbery conviction and six years for his aggravated burglary conviction.

### c. Consecutive Sentencing

Last, the Appellant asserts that the trial court erred in ordering that his sentences for especially aggravated robbery and aggravated burglary be served consecutively, as well as

consecutively to an unserved four-year sentence for theft resulting from a probation violation. A trial court may impose consecutive sentencing upon a determination that one or more of the criteria set forth in Tennessee Code Annotated section 40-35-115(b) exists. This section permits the trial court to impose consecutive sentences if the court finds, among other criteria, that "[t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;" or "[t]he defendant is sentenced for an offense committed while on probation." Tenn. Code Ann. §§ 40-35-115(b)(4), (6) (2003). The length of the sentence, when consecutive in nature, must be "justly deserved in relation to the seriousness of the offense" and "no greater than that deserved" under the circumstances. Tenn. Code Ann. § 40-35-102(1), –103(2).

In *Gray v. State*, our supreme court held that before consecutive sentencing could be imposed based upon classification as a dangerous offender, the following must be present: (a) that the crimes involved aggravating circumstances; (b) that consecutive sentences are a necessary means to protect the public from the defendant; and (c) that the term reasonably relates to the severity of the offenses. 538 S.W.2d 391, 393-94 (Tenn. 1976). In *State v. Wilkerson* and *State v. Imfeld*, our supreme court reaffirmed those principles, holding that before imposing consecutive sentences on the basis that a defendant is a dangerous offender, the trial court must find that the resulting sentence is reasonably related to the severity of the crimes and necessary to protect the public against further criminal conduct. *State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002); *State v. Wilkerson*, 905 S.W.2d 933, 938 (Tenn. 1995).

Specifically, the Appellant argues that the State failed to establish that a thirty-one year sentence is reasonably related to the severity of the offenses or that such a sentence is necessary to protect the public from further criminal acts by the Appellant. Additionally, he argues that even if he meets the criteria of Tennessee Code Annotated section 40-35-115, the sentence is unnecessary and excessive.

In ordering consecutive sentencing, the trial court found that the Appellant was on probation when the instant offenses were committed, as well as finding the Appellant to be a dangerous offender. The record supports both findings.

It is necessary to find the presence of only one of the statutory categories listed in Tennessee Code Annotated section 40-35-115(b) to support the imposition of consecutive sentencing. *State v. Adams*, 973 S.W.2d 224, 231 (Tenn. Crim. App. 1997). Thus, the finding that the Appellant was on probation when these offenses were committed would be a sufficient basis for ordering consecutive sentencing. Nonetheless, after review, the trial court's finding that the Appellant is a dangerous offender is also supported by the record. The circumstances surrounding the commission of the offense indicate that the Appellant has little regard for human life and had no hesitancy about committing a crime where the risk to human life was high. The senseless brutality of these offenses supports a finding that confinement is necessary to protect society from the Appellant's conduct and that consecutive sentencing reasonably relates to the severity of the offenses. The Appellant committed vicious crimes against an elderly woman who had served as a positive influence in his

life. He had no hesitation about beating her severely and leaving her in a life threatening condition in order to satisfy his own drug habits. Accordingly, we affirm the trial court's imposition of consecutive sentences.

## CONCLUSION

Based upon the foregoing, the Appellant's judgments of conviction for especially aggravated robbery and aggravated burglary, as well as the resulting sentences imposed by the trial court, are affirmed.

_____
DAVID G. HAYES, JUDGE